(C. D. 651)

A. H. BURR *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 17, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed at the rate of 3 cents per pound on 203 head of cattle (steers) weighing over 700 pounds each, entered for warehouse at Calexico, Calif., on July 29, 1939, and withdrawn on October 2, 1939. The plaintiff claims that a portion of the cattle should have been assessed at 1½ cents per pound by virtue of the trade agreement with Canada (T. D. 49752) instead of at 3 cents per pound under paragraph 701 of the Tariff Act of 1930 as amended by the trade agreement. The provision in the trade agreement reads as follows:

Cattle, weighing seven hundred pounds or more each:
  Cows, imported specially for dairy purposes_____ 1½¢ per lb.
  Other_____ 1½¢ per lb.
*Provided,* That after December 31, 1938, such cattle weighing seven
  hundred pounds or more each (other than cows imported specially
  for dairy purposes) entered, or withdrawn from warehouse, for con-
  sumption in excess of 60,000 head in any quarter year shall not be
  entitled to a reduction in duty by virtue of this item, and such

cattle (other than cows imported specially for dairy purposes) entered, or withdrawn from warehouse, for consumption in excess of 225,000 head in any calendar year shall not be entitled to a reduction in duty by virtue of this item, but the rate of duty thereon shall not exceed_____ 3¢ per lb.

*Provided further,* That if, after consultation with the Government of the United States of America, the Government of Canada requests the allocation of the quantity entitled to enter at the reduced rate of duty under this item, the Government of the United States of America shall take the necessary steps to allocate the said quantity among countries of export on the basis provided for in Article III of this Agreement

\* \* \* \* \* \* \*

### ARTICLE III

If imports of any article into either country should be regulated either as regards the total amount permitted to be imported or as regards the amount permitted to be imported at a specified rate of duty, and if shares are allocated to countries of export, the share allocated to the other country shall be based upon the proportion of the total imports of such article from all foreign countries supplied by that country in past years, account being taken in so far as practicable in appropriate cases of any special factors which may have affected or may be affecting the trade in that article. In those cases in which the other country is a relatively large supplier of any such article, the Government of the country imposing the regulation shall, whenever practicable, consult with the Government of the other country before the share to be allocated to that country is determined.

On February 27, 1939, the President, by proclamation (T. D. 49811), announced the number of head of cattle weighing over 700 pounds, other than cows imported specially for dairy purposes, from Canada and from other countries to be admitted at the lower rate of duty by virtue of the trade agreement with Canada. The following language appears in the proclamation:

WHEREAS I find that, taking into account special factors affecting the trade, imports into the United States of America from all countries of such cattle weighing seven hundred pounds or more each (other than cows imported specially for dairy purposes) during the years 1936 and 1937 were representative of the trade in such articles:

WHEREAS I find that the proportions of total imports into the United States of America for consumption of such cattle weighing seven hundred pounds or more each (other than cows imported specially for dairy purposes) supplied by Canada and by other foreign countries, respectively, during the years 1936 and 1937 were as follows:

Canada_____ 86.2 per centum
Other foreign countries_____ 13.8 per centum

Now, THEREFORE, be it known that I, FRANKLIN D. ROOSEVELT, President of the United States of America, acting under the authority conferred by the said Tariff Act of 1930, as amended by the said Act of June 12, 1934, as extended by the said Joint Resolution of March 1, 1937, do hereby proclaim that no more than 142,230 head of cattle weighing seven hundred pounds or more each (other than cows imported specially for dairy purposes), the produce of Canada, nor more than 22,770 head of such cattle, the produce of other foreign countries, entered, or withdrawn from warehouse, for consumption during the period April 1 to

December 31, 1939, inclusive, shall be entitled to a reduction in duty by virtue of the said item 701 of Schedule II of the said Agreement; and that no more than 51,720 head of cattle weighing seven hundred pounds or more each (other than cows imported specially for dairy purposes), the produce of Canada, nor more than 8,280 head of such cattle, the produce of other foreign countries, entered, or withdrawn from warehouse, for consumption in any calendar quarter year during the period April 1 to December 31, 1939, inclusive, shall be entitled to a reduction in duty by virtue of the said item 701 of Schedule II of the said Agreement.

The plaintiff introduced as exhibit 1 a copy of a circular letter from the Commissioner of Customs (No. 1987), dated June 22, 1939, in which the procedure for the withdrawal of cattle under the terms of the trade agreement was prescribed. This instruction contains the following:

The following procedure will be followed in connection with the entry or withdrawal for consumption of cattle weighing 700 pounds or more each, other than dairy cows, FROM COUNTRIES OTHER THAN CANADA, under the quota for the THIRD QUARTER of the current calendar year, provided for in item 701, schedule II of the trade agreement with Canada (T. Ds. 49752 and 49811).

In order to afford equal opportunities at all ports for clearing cattle under the tariff rate quota on imports of this class of cattle at the beginning of the third quarterly quota period, all custom houses where entries or withdrawals for consumption of this class of cattle are likely to occur will open simultaneously on July 1, 1939, at 11:00 A. M., Eastern Standard Time, which will be 10:00 A. M. Central Standard Time, 9:00 A. M. Mountain Standard Time and 8:00 A. M. Pacific Standard Time.

Entries and withdrawals for consumption covering this class of cattle may be accepted at 1½¢ per pound, provided the delivery permit is not delivered to the importer or his agent pending determination of their quota status. If delivery of the permit is desired before such determination, importers shall be required to deposit estimated duties at the full tariff rate of 3¢ per pound. In view of the provisions of section 315 of the Tariff Act of 1930, care shall be taken to issue permits of delivery concurrently with acceptance of warehouse withdrawals of this class of cattle, but delivery of permit shall be withheld unless estimated duties at 3¢ per pound are deposited. Cattle will not be released from customs custody until permit has been lodged with the storekeeper and he has released cattle to or upon order of the warehouse proprietor.

The plaintiff introduced as exhibit 2 a copy of a circular letter from the Commissioner of Customs (No. 2012), addressed to customs officers, which letter puts into effect the same procedure described in circular letter No. 1987 with respect to entry of such cattle during the quarter beginning October 2, 1939.

The plaintiff claims that his cattle should have participated in the quota on an equal basis with all other owners of cattle of this class who paid duty at 1½ cents per pound on a portion of their importations, by virtue of the trade agreement with Canada, because, although his entry was marked "8.02 a. m.," his customs broker, at 8:00 a. m. and prior thereto, was standing at the door of the customhouse waiting until it was unlocked and that the only reason he was deprived of having a part of his cattle assessed at 1½ cents per pound was because

the warehouse entry and permit were marked as having been received at 8:02 a. m. instead of 8:00 a. m.

The sole question of fact presented in this case is whether the collector should have marked the warehouse entry and permit as having been received at 8:00 a. m. It appears that the quota for the quarter was filled at the moment of the opening hour at the various ports in the United States so that this importer, whose entry papers were marked as having been received at 8:02 a. m., was deprived of participating and having a proportional share of his cattle assessed at the lower rate of duty.

The record shows that the importation consisted of 203 head of. cattle (steers) weighing approximately 820 pounds each and they were imported under a warehouse entry on July 29, 1939. On Saturday, September 30, 1939, withdrawal papers were prepared and a cashier's check was obtained from the bank and they were taken to the customhouse and a request was made to keep them in the safe until Monday morning so they would be available for entry of the merchandise, but the request was refused. The importer then took the papers to his home where they were put in his safe. At 7:30 a. m. on Monday, October 2, 1939, the customs broker called for the papers and took them to the customhouse, arriving about 7:35 a. m., but the outside door of the customhouse was locked and three employees of the building waited with him until the door was opened and talked with him while he was waiting. The usual time for opening the customhouse is 9:00 a. m. but inasmuch as Calexico is in the Pacific Standard Time zone, it would be necessary to open the customhouse earlier on the opening day of the quota so that entry of cattle could be made at 8:00 a. m. There is some conflict in the testimony as to the moment the door of the customhouse was opened. The broker claims it was about 6 or 7 minutes after 8 o'clock while the deputy collector, who stated that he entered by the side door at 5 minutes before 8, testified that he stood on the inside of the main door watching the clock and opened the door at exactly 8 o'clock; that he then went behind the counter and in "a very short time" the broker tendered the warehouse withdrawal entry with the accompanying papers; that he looked at the clock and put the record stamp on the entry and entered the time. The broker testified that as soon as the front door was opened he followed the deputy collector to the entry desk and handed him the papers; that the deputy collector took the papers and went into his private office; that he did not see the deputy collector stamp the papers and enter the time and he did not find out that the papers were marked as having been received at 8:02 a. m. until in the afternoon when he called for his copy. An employee of the Department of Agriculture corroborated the testimony of the customs broker to the effect that the broker

arrived shortly after 7:30 a. m. and waited in front of the main door of the customhouse and that two other employees of the building were waiting also and talked to the broker, but the witness did not actually see the deputy collector open the door.

It is apparent that, as the main door of the customhouse was not opened prior to 8:00 a. m. on October 2, 1939, it would have been impossible for the broker to reach the entry desk and file his papers at the instant of the opening hour for the quota. We are of opinion that the weight of the evidence establishes that the customs broker was waiting outside of the main door of the customhouse before 8:00 a. m. and that he filed the withdrawal entry papers at the entry desk as soon as he could reach that desk after the door was opened. Inasmuch as the deputy collector took the papers into his private office before he stamped them with the receiving stamp and entered the time thereon, it is reasonable to infer that two minutes could elapse before the official dating stamp and the time memorandum were recorded.

The plaintiff introduced also, as exhibit 3, a copy of a circular letter from the Commissioner of Customs (No. 2149), dated December 21, 1940, relating to the procedure to be used in the entry of such cattle for the year 1941. This letter contains the following instructions:

> At ports where a number of entries or withdrawals for consumption are anticipated, all importers desiring to file entries for consumption and warehouse withdrawals for consumption covering this class of cattle when the quota periods open should be gathered in one place and special arrangements made so that all such entries may be presented at the exact moment for the opening of the quotas. All entries or withdrawals for consumption so presented in proper form with deposit of necessary duties will be considered accepted at the opening hour even though a certain period of time may be required for checking purposes.

If the above statement had been contained in the instruction for the quarter beginning October 2, 1939, it is probable that the collector would have opened the door earlier which would have permitted the broker to reach the entry desk at 8:00 a. m. and the time would have been entered at 8:00 a. m. instead of at 8:02 a. m. which was apparently the time of acceptance of the papers after checking them. We find that the broker was prevented by the locked door from filing his papers at exactly 8 o'clock and we are of opinion that the importer should have participated in the lower rates of duty equally with other importers of such cattle who were able to file their entry papers at the official opening moment of the quarter in the different jurisdictions.

The plaintiff introduced also, as exhibit 5, a letter from the Commissioner of Customs, dated February 28, 1941, addressed to Harper and Harper, attorneys for the plaintiff in this case, containing the following:

> Reference is made to your letter of February 12, 1941, requesting information regarding the quota on cattle weighing 700 pounds or more each, other than dairy

cows, for the last quarter of the calendar year 1939. You seek this information especially to enable you to prepare for trial the case of Mr. A. H. Burr v. United States, Protest 28139-K/56.

The quota on cattle weighing 700 pounds or more each, other than dairy cows, from countries other than Canada, for the final quarter of the calendar year 1939, did open on October 2, 1939. The various customhouses, depending on the time zone in which they are located, were opened at 11:00 A. M. Eastern Standard Time, 10:00 A. M. Central Standard Time, 9:00 A. M. Mountain Standard Time, and 8:00 A. M. Pacific Standard Time. Accordingly, the deputy collector of customs at Calexico, California, has averred that the customhouse at that port was open for business at 8:00 A. M., Pacific Standard Time, on October 2, 1939.

In order to provide for equal opportunities to all importers for clearing of cattle under the tariff rate quota, the Bureau has held that at the opening of a quota period when it is known that more cattle will be presented for entry than may be permitted entry under the quota at the lower rate of duty, the time of presentation of entry or withdrawal by the importer if all requirements are met determines the quota status of such entries. If an entry covering the quota-type cattle in question had been presented immediately on the opening of the quota period at 8:00 A. M. on October 2, 1939, it would have participated in the allotments granted the entries and withdrawals at the lower rate of duty. For the final quarter of the calendar year 1939, approximately 74.55 percent of each entry, or withdrawal, for consumption of quota-type cattle weighing 700 pounds or more each from countries other than Canada was admitted at the lower rate. However, in this particular case, the deputy collector of customs believes that the actual time of presentation of withdrawal No. 1-A at Calexico, California, by the broker was 8:02 A. M., Pacific Standard Time, which would not accord that withdrawal favorable treatment under the tariff rate quota.

On October 2, 1939, the entire tariff rate quota on cattle weighing 700 pounds or more each, from countries other than Canada, was filled at the opening minute of the opening hour of the quota period, and amounted to 6,663 head, all from Mexico. The number of head of this type of cattle from Canada permitted entry during the final quarter under quota at the reduced rate was 40,351 head, but only 35,663 head actually entered consumption, leaving a portion of that quota unfilled.

It thus appears from an examination of exhibit 5 that on October 2, 1939, the entire tariff quota of cattle weighing 700 pounds or more each from countries other than Canada, not including cattle imported for dairy purposes, was filled at the opening minute of the opening hour of the quota period and that each importer who participated in the allotment secured a reduction to 1½ cents per pound on 74.55 per centum of his importation.

The plaintiff in this case did everything humanly possible to comply with the law. The record discloses that for approximately half an hour before the Government officials opened the customhouse the broker was standing at the door with all required documents and certainly this importer should not be penalized because the customs officials at Calexico were not ready to accept his entry "at the opening minute of the opening hour of the quota period."

We are of opinion that, under the circumstances, the collector should have stamped the entry papers as having been received at 8:00 a. m. and that the plaintiff should participate in the quota to

the same extent as other importers whose entries were marked as having been received at the opening minute of the opening hour of the quarter, and we hold 74.55 per centum of the cattle imported in this shipment dutiable at 1½ cents per pound under paragraph 701 of the trade agreement with Canada. To that extent, the protest is sustained and judgment will be entered in favor of the plaintiff.

As to the remainder of the cattle, the protest is overruled.