(C.D. 4778)

WOLF D. BARTH CO., INC. *v.* UNITED STATES

Court No. 75-12-03291

Port of Philadelphia

(Dated November 9, 1978)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*Saul Davis*, trial attorney), for the defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge: Defendant has filed this motion pursuant to rules 4.7(b) and 4.12 for an order severing and dismissing protest No. 1101-5-000472, covering entry No. 132131, from this action for lack of jurisdiction. It contends that the protest is untimely since it was

---

[13] Because the court has determined that the merchandise in issue is nondutiable while it remains in the foreign trade subzone, it is unnecessary to address plaintiff's alternative claim that, if dutiable, the merchandise should be classified as a gas.

not filed within 90 days of liquidation as required by 19 U.S.C. 1514 as amended.

The motion is predicated upon the following undisputed facts: The involved entry was liquidated on January 3, 1975, at the port of entry at Philadelphia, Pa. On March 4, 1975 (within the 90-day protest period), plaintiff's attorneys forwarded a written protest against that liquidation to the office of the New York regional commissioner where it was received and stamped the following day. On April 29, 1975, after the expiration of the 90-day protest period, the New York regional commissioner returned a copy of the protest to the plaintiff showing that it was denied on April 25, 1975, and noting that the protest was erroneously accepted at New York. Subsequently, the involved protest was received by the district director at the port of Philadelphia on April 30, 1975, 116 days after the date of liquidation.

Plaintiff, opposing the motion, contends that although the protest was inadvertently misdirected to the regional commissioner of New York by its attorneys, it was seasonably filed and that the New York office failed to take any action on the protest until the protest time limitation expired. It argues that the unreasonable delay in returning it, at this point, can only be presumed to have been deliberate or otherwise improper, and therefore this court should not decline jurisdiction before exploring the facts of the delay in an evidentiary hearing.

Defendant, in its response, states that plaintiff's argument that the mistake of its attorneys is mitigated by an alleged breach of duty by the Customs officers at the port of New York is essentially based upon the doctrine of estoppel. That doctrine, asserts the defendant, has no application to suits against the United States where jurisdiction of the court is in issue, except where there is positive proof of affirmative misconduct by Government officials. Defendant urges plaintiff's claim that there was a breach of duty on the part of Customs officials in New York is without any factual foundation and submits the affidavit of Harry L. Hammer, the then head of the protest and control section of the New York region, in support of this position.

In his affidavit, Mr. Hammer avers, *inter alia*, that due to the large volume of protests received during the month of March 1975, the request for retrieval of the instant entry was made approximately 5 weeks after the receipt of the protest (Mar. 5, 1975), by which time the 90-day protest period had expired; that the filing error was noted on April 25, 1975, 22 days after the expiration of the statutory period; that plaintiff was notified of the error as soon as it was discovered. He further states that there is no evidence of any attempt to frustrate plaintiff's statutory right to file the involved protest.

19 U.S.C. 1514(b)(1)(2) requires in pertinent part that a protest be filed with the appropriate Customs officer designated in regulations prescribed by the Secretary of the Treasury within 90 days after

liquidation. It is undisputed that according to section 174.12(d) of the Customs Regulations, the appropriate Customs officer for the filing of the protest in this case was the district director at Philadelphia, Pa. where the involved entry was made.

Notwithstanding the foregoing statutory limitation, plaintiff maintains that the facts concerning the delay in returning the protest to it by the regional commissioner in New York should be explored in an evidentiary hearing and points to the court's recent decision in *Point Four Ltd., Inc.* v. *United States*, 78 Cust. Ct. 190, C.R.D. 77–4, 431 F. Supp. 1254 (1977), in support of its position.

In that case, the plaintiff-importer, acting without counsel, contended that it was advised by Customs personnel at the port of entry (Toledo, Ohio) that it should file its protests at Chicago, Ill.; that it seasonably mailed the protests to Chicago as advised; and that the Chicago office did nothing with the protests until the protest time limit expired and then forwarded them to the district director at the headquarters port (Cleveland, Ohio) where they were received and untimely filed. Thus, the foregoing was alleged by plaintiff in its complaint as follows:

> 3. Protest was mailed, upon advice of the Toledo office, to U.S. Customs Service, Chicago, Ill., February 27, 1976. They forwarded it to Cleveland, Ohio, office where it was stamped March 15, 1976 and dated filed as March 16, 1976.

The defendant, having obtained an order of the court on consent for an extension of time to file its answer, elected in the interim to file a motion to dismiss on jurisdictional grounds.

In the course of its opinion in *Point Four*, the court said at page 192: "If full credence be given to the allegations in the third paragraph of the complaint in this case it is clear that the ends of justice as well as the objective of the statute of limitations will be ill served by a declination of jurisdiction on the part of the court. But at this point in the proceedings a judgment in the matter either way is premature, there being no evidentiary record before the court in connection with this motion."

The court held that inasmuch as defendant had procured a postponement in the joinder of issue under a commitment to answer the complaint, it was appropriate that it be required to do so. Accordingly, it denied defendant's motion to dismiss, without prejudice, however, to its raising the jurisdictional issue by way of its answer.

It appears that the facts involved in *Point Four* and those herein are clearly distinguishable. In the former, plaintiff charged customs officials with affirmative deceptive conduct, while here there is no such contention. Moreover, the erroneous filing of the protest in the instant case was solely the result of an act done by plaintiff's attorneys and not any affirmative erroneous conduct on the part of customs

officials, as claimed in the cited case. Significantly, in *Point Four*, plaintiff alleged the foregoing affirmative erroneous conduct in its complaint while in the instant controversy the complaint is devoid of any such allegation. Indeed, plaintiff's assertion of presumed deliberate or otherwise improper delay on the part of customs officials appears initially in its opposition to this motion.

It seems quite clear that in *Point Four* the court was concerned that "the rights of importers will not be forfeited as a consequence of deceptive or improper practices indulged in by customs officials." Accordingly, the court cited the case of *A. H. Burr* v. *United States*, 9 Cust. Ct. 13, 19–20, C.D. 651 (1942), where there was improper delay by customs officials in time-stamping the importer's entry papers until after the closing of a cattle quota; *Henry A. Wess, Inc.* v. *United States*, 25 Cust. Ct. 34, 37, C.D. 1259 (1950), where the merchandise was examined by the wrong customs official acting under color of authority; *Snake King* v. *United States*, 18 Cust. Ct. 33, 34–35, C.D. 1041 (1947), where the protest was accepted by the deputy collector after the closing hour on the 60th day after liquidation. It appears that none of the factors involved in any of the foregoing cases are present in the one before us. The instant situation involves an allegation, enshrouded with a considerable degree of vagueness, of "presumed" deliberate or otherwise improper delay on the part of customs officials in returning a protest filed in the wrong place by plaintiff's attorneys.

While there may be some room for questioning the delay in returning the erroneously filed protest, little credence may be ascribed to that argument in the light of: (1) The mistake on the part of plaintiff's counsel and its failure to discover and correct the same prior to the expiration of the protest filing period; (2) the aforestated explanation of the delay by Mr. Hammer; and (3) plaintiff's failure to include in its complaint any allegations of deliberate or improper conduct on the part of customs officials.

A factual situation quite analogous to the one before us appears in the case of *United China & Glass Co.* v. *United States*, 53 Cust. Ct. 68, C.D. 2475 (1964). There, the involved merchandise was liquidated at the port of New Orleans. Plaintiff seasonably filed its protests with the collector at San Francisco. The involved protests were then forwarded by the San Francisco collector to the New Orleans collector and were received by him after the expiration of the protest time limitation period. The court in granting defendant's motion to dismiss the involved protests on the ground that they were untimely filed said: "The filing of protests, by whim or negligence, with some one or another of the many collectors in the United States, seems to us not to have been intended by Congress in enacting sections 514 and 515."

It appears that the reasoning of his court in the foregoing case is equally applicable to the situation before us.

Accordingly, it is

ORDERED that defendant's motion to sever the involved protest and to dismiss the action insofar as it relates to that protest be granted.

IT IS FURTHER ORDERED that defendant be given 30 days in which to reply to the complaint with regard to the remainder of the action.