(C. D. 1925)

THE LANSDOWNE DISTILLERY v. UNITED STATES

United States Customs Court, Third Division

(Dated October 17, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Richardson, Judge: This case involves a protest covering merchandise consisting of 5,000 cases of Spanish brandy, entered for warehouse at Philadelphia. Defendant has moved to dismiss said protest on the ground that it was not filed within the statutory 60-day period following liquidation and is, therefore, untimely within the purview of section 514, Tariff Act of 1930 (19 U. S. C. § 1514). The case is before us on that motion.

Section 514, which governs the time and manner of protesting decisions of the collector, provides in part as follows:

> . . . all decisions of the collector, including . . . his liquidation or reliquidation of any entry . . . shall upon the expiration of sixty days after the date of such liquidation, reliquidation, . . . be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, . . . shall, within sixty days after, but not before such liquidation, reliquidation, . . . as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, . . . the reasons for the objection thereto.

The record reveals that the involved entry was made in October 1944. A transfer was filed with the collector at Philadelphia by the importer of record, plaintiff herein, authorizing the Oregon Liquor Control Commission of Portland, Oreg., to withdraw 5,000 cases from the warehouse. (R. 43.) In February 1945, the merchandise was manipulated, resulting in 4,924 $5/12$ cases, and the entire manipulated quantity was transferred in bond to the Oregon Liquor Control Commission. The transferred merchandise was immediately withdrawn by the transferee for transportation in bond to Portland, Oreg. On May 22, 1946, the entry covering said merchandise was posted as a decrease in the Philadelphia Bulletin Notice of Entries Liquidated on that date. Said bulletin notice was received in evidence as plaintiff's exhibit 1. The posted notice contained the number and date of the entry, the names of the importer and vessel, and the word "Decrease" under "Remarks," but it did not show the amount or the nature of the decrease.

Apparently, it was the practice, after the posting of notice of liquidation of a warehouse entry on the official bulletin, to route the entry to the warehouse division for adjustment of the warehouse ledger with the liquidation and to send to the parties concerned a notice of duties and taxes found due on adjustment of the warehouse ledger record promptly after liquidation. The record discloses that, in keeping with the practice, the entry in question was sent to the warehouse clerk for adjustment and that "a question was raised whether additional allowances in internal-revenue taxes should not

have been made for broken and missing bottles. The papers were referred to the liquidating division on May 27, 1946, for reconsideration. Because of this reference, the adjustment of the warehouse ledger was not complete at the time and no notice of adjustment was sent to the importer. The entry papers became misplaced in the liquidating division and were not found until March 16, 1950." The foregoing quotation is part of an excerpt read into the record from a letter addressed to the collector of customs at Philadelphia from the Commissioner of Customs, dated July 13, 1950, signed by W. E. Higman, Chief, Division of Classification, Entry and Value. (R. 14.) This letter was received in evidence, over the objection of counsel for plaintiff, and marked defendant's exhibit A. The warehouse ledger record was adjusted on March 17, 1950. It appears that, on that date, a formal notice of duties and internal revenue taxes due was sent to the customhouse broker, who had made the entry on behalf of the importer. The record shows that, on April 25, 1950, a formal notice was sent to the importer, the plaintiff herein, showing that it owed to the Government duties, classified as "increased and additional duty," in the amount of $455.83, and internal revenue taxes, in the amount of $1,441.80. On May 8, 1950, the importer filed a protest in which it challenged the legality of the liquidation of the entry alleging, among other things, that it was posted as a decrease, whereas the notice of duties and taxes due thereon called for the payment of increased and additional duties. Later, the importer received another notice of duties and internal revenue tax due. This notice, dated July 19, 1950, was marked "amended" and showed duties, classified as "increased and additional duty," due of $452.33 and internal revenue taxes, amounting to $1,429.20. These notices were received in evidence as plaintiff's exhibits 2 and 3.

It is the plaintiff's position that the amounts shown on exhibits 2 and 3 constitute increases and new determinations made by the collector in 1950. Plaintiff's counsel urges that the importer had turned all of the imported merchandise and the duty and tax liabilities thereon over to the transferee, prior to liquidation, and that the decision of the collector 4 years later holding that the original importer had not passed on all of its liabilities to the transferee was a new decision against which a protest would lie. It claims further that the entry was erroneously posted as a decrease and that the erroneous posting of an entry as a decrease is a nullity, if it is actually an increase.

It is the contention of the Government that the entry was liquidated on May 22, 1946, and that all assessments of duties and taxes were made on the basis of that liquidation. Counsel for defendant takes the position that the protest herein is lodged against notices

comprising exhibits 2 and 3. He argues that these notices are demands or requests to pay duties and taxes due and owing under the liquidation of May 22, 1946, and do not constitute determinations of duties or exactions by the collector, and that a protest will not lie against such demand, citing *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. (Customs) 90, C. A. D. 130, and *Continental Distilling Corporation* v. *United States*, 37 Cust. Ct. 163, C. D. 1817.

To support his contention that the aforesaid notices (exhibits 2 and 3) were merely demands for duties and taxes determined by the collector to be due under the liquidation of May 22, 1946, and that there had been no modification by the collector of his original liquidation, counsel for the defendant called as a witness, Sara E. Smith, chief liquidator in the office of the collector of customs at Philadelphia. She was examined by the Government and cross-examined by counsel for plaintiff. With respect to exhibits 2 and 3, *supra*, the witness testified, in substance, that the entry was liquidated on May 22, 1946, that, on withdrawal of the merchandise by the transferee, the collector at Portland, Oreg., was charged with duties and taxes on the quantities actually withdrawn, and that the amounts of duties and taxes demanded from the importer on the notice of April 25, 1950 (exhibit 2), were determined by the difference of the liquidated duties, as compared to the amount that was charged to the collector at Portland, Oreg. She explained that the difference in the amounts on the demands of April 25, 1950, and the amended demand of July 19, 1950, was occasioned by the fact that the importer of record was given credit for breakage that had occurred while the merchandise was being transported to Oregon, and that the collector at Portland was charged with the amounts so credited, that the amounts credited to the plaintiff-importer and charged to the collector at Portland balanced each other. From the record, it appears that the collector at Philadelphia was not able to determine, until sometime in 1950, the amounts that were to be charged to the collector at Portland.

We do not feel that, to resolve this controversy, it is necessary to decide whether or not the exhibits (2 and 3) constitute mere requests for payment of taxes and duties found due on the liquidation of May 22, 1946, as defendant contends, or are increases and new determinations or decisions on the part of the collector, as the plaintiff would have the court believe.

It was establish· d during the hearing that the entry papers were misplaced in the liquidating division soon after liquidation and were not accessible to the importer. It could not examine them to determine whether or not it desired to avail itself of the right to protest afforded by section 514, *supra*. The record discloses that these papers were not discovered until March 16, 1950, at which time, it is assumed,

they were available for examination by parties affected thereby, so that they could learn the actual facts of the liquidation and could intelligently chart their action with regard thereto. If an importer should choose to file a protest against a liquidation made by the collector under the authority of section 514, *supra*, he must, in the words of the statute, "file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. . . ." In order to comply with this mandate of the statute, it is plain one would have to have available more information concerning the liquidation than is afforded by the official bulletin notice. In this regard, counsel for plaintiff asked the witness for the Government this question:

X Q. . . . Let me ask it this way: can an importer determine the amount of decreased duties and taxes from an examination of the bulletin notice of liquidation, assuming that the entry papers are missing?

. . . . . . .

A. It would be difficult unless they had other records, the ledger sheet had been completed or the accounting division records had been completed, he could tell from them.

It was established that the ledger sheet was not completed until the discovery of the entry papers on March 16, 1950. Also, the long-established practice of the collector's office of sending statements to the importer subsequent to posting giving detailed information of duties due was not followed in this case.

A somewhat similar state of facts existed in the case of *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C. D. 1379. There, as in the case at bar, the entry papers were misplaced, after notice of liquidation of plaintiff's entry was posted, and were not available to plaintiff or to its agents until several weeks thereafter. Plaintiff filed a protest within the 60-day period commencing with the day the entry was found and made available to plaintiff. In holding said protest timely, the court said:

. . . the purpose of the notice of liquidation is that the importer or others interested may be apprised of the action taken by the collector and may invoke, if necessary, the provisions of law by which administrative and judicial review of the collector's action may be secured. To be advised only that a liquidation had taken place without an opportunity to learn the actual facts of the liquidation which would enable one to determine his subsequent course of action, would, of course, be a nugatory thing. . . .

. . . . . . .

. . . *liquidation cannot be considered to be complete until an opportunity has been afforded the proper parties to be apprised of the facts of the liquidation.* . . . [Italics supplied.]

The plaintiff was not afforded an opportunity to examine the entry papers, due to their loss and the failure of the collector to follow his

long-established practice of sending a detailed statement of the facts of liquidation to the importer. Where an administrative agency over a long period of time establishes a practice of informing persons who have business before the agency of their obligations to the agency, such persons are entitled to assume that the established practice will be followed, in the absence of notice that it has been discontinued.

We are of the opinion that the case of *Wong Sang Man, supra,* is decisive of the issue in this case. Following that authority, we hold that liquidation was complete on March 16, 1950, the date that the misplaced entry papers were found and were available to plaintiff, and that the running of the statute of limitations commenced on that day. The involved protest was filed May 8, 1950, within a period of 60 days starting with March 16, 1950, and was, therefore, timely.

The cases relied on by the defendant, *United States* v. *Mexican Petroleum Corp., supra,* and the *Continental Distilling Corporation* v. *United States, supra,* lack the factual element of the misplaced entry papers, and the consequent unavailability of said papers to the importer, and are, therefore, distinguishable from the case at bar.

The motion to dismiss is denied.

## CONCURRING OPINION

DONLON, Judge: Nothing in the record persuades me that liquidation was complete on March 16, 1950. The liquidation file had been mislaid in the collector's office for nearly 4 years.

Having found the lost papers on March 16, 1950, if the collector then had done nothing further with them until after May 16, 1950, under the rule laid down by the majority, plaintiff's right to protest would have been effectively barred. I do not agree that a long-delayed internal transaction, within the collector's office, and one not carried out as the law and regulations require, constitutes constructive availability or is the final act fixing date of liquidation.

*Wong Sang Man* v. *United States,* relied on by the majority, does not so hold. There, the record fails to show the date on which liquidation papers, lost for a few weeks, were found. The case holds that, on the record before the court, the lost papers were, *in fact,* available to plaintiff on September 13, 1948. On that record, we held liquidation complete on that date.

The liquidation was not complete in 1946, as defendant argues. If liquidation were in fact completed, clearly it was some time within the 60 days prior to the date the protest was filed. I concur in the result. The motion to dismiss the protest on the ground of late filing should be denied.

Unless the parties have further proofs to offer, the case should be submitted for final decision.