(C.D. 4793)

STATE METALS, INC, *v.* UNITED STATES

Court No. 76–6–01378

(Decided March 28, 1979)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*David M. Cohen*, Chief, Customs Section, and *John J. Mahon*, trial attorney), for the defendant.

RE, Chief Judge: Pursuant to the provisions of rule 12.1 of the rules of the U.S. Customs Court, plaintiff has moved for a rehearing, and a reconsideration of the judgment rendered in this action. Specifically, plaintiff seeks to vacate a voluntary abandonment of two Customs entries, entry Nos. 133088 and 107703, submitted to the court on an agreed statement of facts, and which resulted in the decision and judgment under reconsideration.

The decision and judgment, entered February 9, 1978, provided for the reliquidation of only one of the three entries of merchandise which were the subject matter of that action. The two entries in issue were voluntarily abandoned by the plaintiff because of the belief that their liquidation was void, as posted by the Customs Service at the port of entry, Houston, Tex., on the bulletin notice under the wrong importer's name.

In the instance of the two entries in issue, the Customs Service, in issuing Customs Form 4333–A, Notice of Entries Liquidated, listed the

name of the importer as Winter-Wolff International Corp., rather than State Metals, Inc., the plaintiff herein. State Metals, Inc., was formerly known as State Metals Division, Winter-Wolff International Corp. This notice of liquidation, which was sent to plaintiff, is called informally a "courtesy notice." In response to that notice, plaintiff's attorney filed a protest contesting the classification of the merchandise with the name of the importer of record as Winter-Wolff International Corp., as indicated in Customs Form 4333-A, Notice of Entries Liquidated.

Unknown to the importer's attorney, however, the bulletin notice of entries liquidated, Customs Form 4333, posted in Houston, Tex., had the correct importer's name, State Metals, Inc., and only the "courtesy notice," Customs Form 4333-A, had the incorrect name. As a consequence of the mailing and reliance upon the "courtesy notice," plaintiff, State Metals, Inc., failed to file a protest within 90 days from the bulletin notice of entries liquidated, form 4333, posted in Houston, Tex.

After completion of the administrative proceedings before the Customs Service, a civil action was instituted, in the name of State Metals, Inc., contesting the classification of the merchandise on all three entries. The action resulted in an agreement between the parties that the merchandise had been improperly classified by the Customs Service, and a proposed stipulation was drafted which reflected its lawful and proper classification.

There is no question on the substance or merits of the classification of the merchandise. The defendant conceded that the merchandise, including the two entries in dispute, had been improperly classified, and, hence, consented to submit the action on an agreed statement of facts.

Before executing the agreed statement of facts, however, the defendant objected to the inclusion of two of the three entries, asserting that the court lacked jurisdiction. Defendant contended that, as to the two entries, the importer was Winter-Wolff International Corp., a separate corporation distinct from the importer of record in the civil action, i.e., State Metals, Inc.

Plaintiff apparently agreed with defendant's assertion as to the court's lack of jurisdiction. Nevertheless, it responded that the liquidation of the two entries was legally insufficient since the "courtesy notice," form 4333-A, and presumably the posted notice of liquidation, form 4333, were in the name of Winter-Wolff International Corp.

Plaintiff, following the procedure indicated by the defendant, abandoned the two entries, and submitted the agreed statement of facts, and proposed decision and judgment, as to only one of the entries.

After the decision and judgment was entered, plaintiff wrote the district director of the U.S. Customs Service in Houston, Tex., asking

that the administrative error be corrected, and that liquidation be completed in the name of State Metals, Inc. The customs officials in Houston, by letter, informed plaintiff's counsel that the name listed on the Customs Form 4333, Bulletin Notice of Entries Liquidated, posted at the port of entry was State Metals, Inc. After receipt of this letter, plaintiff's attorney filed the present motion for rehearing and reconsideration. With the consent of defendant's counsel, it requested oral argument on the motion.

The defendant has submitted an affidavit by a supervisory ministerial clerk at the customhouse in Houston which states in part:

"Cayetano Carrillo, Jr., being duly sworn, deposes and says

1. That I am Supervisory Ministerial Clerk, U.S. Customs Service for the Houston District, and as such am in charge of maintaining the Bulletin Notice of Liquidation.

2. That during the year 1975, including the period from October 24, 1975, through October 31, 1975, it was the uniform practice of the Houston District to make a comparison of the computerized Bulletin Notice as received from Silver Spring, Md., with the importer of record information as shown on the entry, Customs Form 7501, prior to posting the Bulletin Notice of Liquidation.

3. That the Bulletin Notice of Liquidation of entry 107703 * * * was in fact posted in the form shown.

4. That the Bulletin Notice of Liquidation for entry 133088 * * * was in fact posted in the form shown.

5. That the name of importer of record may differ on the Bulletin Notice of Liquidation from the name of importer of record on Customs Form 4333–A, Notice of Entries Liquidated, for entry 107703 and entry 133088.

6. That the reason for such a difference is that the names of importer of record were changed on the Bulletin Notice of Liquidation, prior to posting, so as to conform to the names shown on the entries."

The defendant opposes plaintiff's requested relief and asserts that the liquidations of the entries were proper. It contends that, as verified by the affidavit of the Houston customs official, there have been valid liquidations completed in compliance with the applicable regulations.

The question presented, therefore, is whether, on these particular facts, the plaintiff-importer received a legally sufficient notice of liquidation.

Section 500 of the Tariff Act of 1930, as amended, which governs appraisement, classification, and liquidation procedures provides that:

*"The appropriate customs officer shall, under rules and regulations prescribed by the Secretary—*
    (a) appraise merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and

means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(b) ascertain the classification and rate of duty applicable to such merchandise;

(c) fix the amount of duty to be paid on such merchandise and determine any increased or additional duties due or any excess of duties deposited;

(d) liquidate the entry of such merchandise; and

(e) *give notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in such regulations."* [Italics added.]

The Secretary of the Treasury has prescribed the "form and manner" for giving notice of liquidation of formal entries in the customs regulations.

The following are the pertinent regulations which were issued by the Secretary (38 F.R. 17443, 17483, issued July 2, 1973), effective August 1, 1973:

"§ *159.9 Notice of liquidation and date of liquidation for formal entries.*

(a) *Bulletin notice of liquidation. Notice of formal entries shall be made on a bulletin notice of liquidation, Customs Form 4333 or 4335:*

(1) *Customs Form 4333.* Customs Form 4333 shall be used for the following types of entries:

(i) Dutiable consumption entries;

(ii) Free consumption entries liquidated as dutiable;

(iii) Warehouse entries;

(iv) Drawback entries;

(v) Vessel repair entries;

(vi) Appraisement entries;

(vii) Permanent exhibition entries liquidated as dutiable; and

(viii) Other entries for which a bulletin notice of liquidation is required and for which Customs Form 4335 is not appropriate.

\*     \*     \*     \*     \*     \*     \*

(b) *Posting of bulletin notice. The bulletin notice of liquidation shall be posted for the information of importers in a conspicuous place in the customhouse at the port of entry (or Customs station, when the entries listed were filed at a Customs station outside the limits of a port of entry), or shall be lodged at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons, who shall be directed to that place by a notice maintained in a conspicuous place in the customhouse stating where notices of liquidation of entries are to be found.* [Italic added.]

(c) *Date of liquidation.* The bulletin notice of liquidation shall be dated with the date it is posted or lodged in the customhouse for the information of importers. The entries for which the bulletin notice of liquidation has been prepared shall be stamped "Liquidated," with the date of liquidation, which shall be the same as the date of the bulletin notice of liquidation. Such stamping shall be deemed the legal evidence of liquidation."

Plaintiff contends that the Customs Form 4333-A, Notice of Entries Liquidated, is customarily and routinely issued by the Customs Service, and that this notice is relied upon by importers. Specifically, it explicitly states that this notice was received and relied upon in the present action to file the protest which challenged the classification of the imported merchandise in the three entries.

Whether there has been compliance with the enabling legislation is the fundamental inquiry in all judicial review of administrative action. A person adversely affected by administrative action may also challenge whether the administrative official has followed the necessary procedural requirements. See *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 413-14, 91 S. Ct. 814, 822 (1971) and cases cited in Schwartz, *Administrative Law* 157-60 (1976).

There is no doubt that the Customs Service, under the governing statute and the applicable regulations, is required to give a final notice of liquidation. The law is clear that the final notice of liquidation must comply with the pertinent statutory provisions and Customs regulations. Judicial decisions teach the importance of full compliance, and that a failure to comply in all respects will result in the notice being declared insufficient.

In *The Lansdowne Distillery* v. *United States*, 39 Cust. Ct. 190, C.D. 1925 (1957), although a notice of liquidation of an entry had been posted, the importer was not given access to the entry papers which contained the facts upon which the collector based his action. This court held the notice of liquidation to be incomplete, and tolled the statutory period of time until the importer was afforded the opportunity to be apprised of the facts of the liquidation. Of special importance is the statement of the court that, "[w]here an administrative agency over a long period of time establishes a practice of informing persons who have business before the agency of their obligations to the agency, such persons are entitled to assume that the established practice will be followed, in the absence of notice that it has been discontinued." 39 Cust. Ct. at 195. See *Service* v. *Dulles*, 354 U.S. 363, 77 S. Ct. 1152 (1957); *Vitarelli* v. *Seaton*, 359 U.S. 535, 79 S. Ct. 968 (1959). See also cases cited in *United States* v. *Heffner*, 420 F. 2d 809 (4th Cir. 1970).

At the oral argument on the present motion for rehearing, counsel for the parties agreed that the Customs form 4333-A, i.e., the notice of entries liquidated, has been issued regularly for the past eight years by the Customs Service, and that it is known by the Customs Service that it is relied upon by the importer or his agent. Indeed, the very purpose for its issuance is to give advance notice of the liquidation of an entry. It is also apparent that, as in this case, the "courtesy notice" may serve as the only notice upon which the decision to protest is based.

In *The Diamond Match Company* v. *United States*, 45 Cust. Ct. 198, C.D. 2223 (1960), the issue before this court was whether the inaccurate filing of a protest because of a change in corporate name from the Diamond Match Co. to Diamond National Corp. was such an error as to invalidate it. The protest was filed in the name of The Diamond Match Co., an American manufacturer. On appeal, the Court of Customs and Patent Appeals agreed with this court's holding that it did not, and quoted with approval its statement that "[t]he inaccuracy of the name used in the protest was not such as to fail to disclose the real party in interest or to mislead the importer or the Government." *The Diamond Match Company* v. *United States*, 49 CCPA 52, 57, C.A.D. 796 (1962).

Notwithstanding the fact that the "courtesy notice" listed Winter-Wolff International Corp., as the importer, it was State Metals, Inc., which received it and filed the protest. On the facts presented, no intention to mislead the Government can be ascribed to the plaintiff since its corporate name had recently included the name of Winter-Wolff International Corp. Moreover, it was possible for the defendant, prior to issuing the "courtesy notice," to have established, as it did thereafter from the entries in its possession, that State Metals, Inc., not Winter-Wolff International Corp., was the real party in interest. Its subsequent discovery of that fact, in time to correct Customs Form 4333, did not cure the defect on Customs Form 4333–A, nor undo the reliance placed upon it.

In *Lorraine Fibre Mills, Inc.* v. *United States*, 38 Cust. Ct. 94, C.D. 1848 (1957), the question presented was whether the customs officials, under the statutory and regulatory provisions, followed the proper "form and manner" of "conspicuously" posting a notice of liquidation.

The pertinent facts established that the bulletin notices of liquidation for the entries at the customhouse were contained in folders, usually displayed in the public rooms, and the entries were on a desk. Since the entry in issue was not listed on the sheets in the folders, or available at the desk, the court held that the notice of liquidation was insufficient. The court stated:

> "According to section 505 (predecessor provision to sec. 500) of the Tariff Act of 1930, the collector is required to give notice of liquidation in the form and manner prescribed by the Secretary of the Treasury. The regulations in effect at the time of this entry provided that liquidated entries be immediately scheduled on a bulletin notice of liquidation; that such notice be posted as soon as possible in a conspicuous place in the customhouse or lodged in some suitable place there in such manner that it could be readily located and consulted by interested parties.
> The provisions of section 505, *supra*, are mandatory and give no discretion to collectors either as to the form or manner of

notice, and the regulations requiring posting or lodging in a conspicuous place have the force and effect of law." 38 Cust. Ct. at 99.

The question of legal sufficiency and validity of the notice of liquidation was also presented in *United States* v. *Astra Bentwood Furniture Co.*, 28 CCPA 205, C.A.D. 147 (1940). In the bulletin notice of liquidation, the name of the importer, Astra Bentwood Furniture Co., appeared as "Astringent Wood Furniture Co." The court held that the notice was insufficient and void since the name of the importer, and the date of entry appearing on the notice were incorrectly stated.

It is not questioned that a notice of liquidation issued pursuant to section 500 of the Tariff Act of 1930, as amended, must be in the form and manner prescribed by the Secretary of the Treasury in the Customs regulations. It is also clear these requirements are mandatory, and customs officials do not possess discretion to vary either the "form or manner" for the giving of notice.

The defendant contends, however, that "Customs Form 4333–A has no significance under the statute or the mandatory regulations and whether plaintiff relied upon it or not in preparing the protest to be filed is immaterial." It also asserts that plaintiff "had no right to rely completely on the 'courtesy notice' in preparing the protest to be filed." In support of its contention, defendant relies on the case of *Henry A. Wess, Inc.* v. *United States*, 57 Cust. Ct. 139, C.D. 2743 (1966), *aff'd*, 54 CCPA 77, C.A.D. 910 (1967).

In the *Wess* case, the question presented pertained to the posting practices employed at the port of Cincinnati, Ohio. The defendant maintained that the notices of liquidation in issue had been duly posted in a legally sufficient manner in accordance with the pertinent statutory and regulatory provisions of law. Plaintiff contended that notices were customarily posted in sequence, except for the particular entry in issue dated September 24, 1962. There was no doubt that the notice was in fact posted on September 24, 1962. Plaintiff's allegation pertained only to whether it had been posted in sequence.

Having found that "plaintiff has adduced no evidence to establish that the * * * notice was not posted in sequence by the collector on September 24, 1962, in keeping with his customary practice," the Customs Court decided for the defendant. In affirming the judgment in favor of the defendant, the Court of Customs and Patent Appeals held:

> On the basis of the record before us, we must agree with the Customs Court that the evidence fails to establish a lack of compliance with the statutory and regulatory provisions relative to the posting of liquidation notices affecting the involved entries. 54 CCPA at 80.

After referring to the governing statute and regulations, the appellate court uttered the dictum that "[t]here is no requirement that the notices be posted in any sequence," and added:

> The practice in vogue of posting in sequence is clearly an accommodation and convenience to interested persons, which does not serve to enlarge or broaden the mandatory requirement of the law. 54 CCPA at 80.

It is clear that the holding in *Wess* turned on the evidence presented at the trial. The appellate court referred to the presumption that public officials have discharged their duties in accordance with the applicable laws and regulations, and that the burden rested "upon the importer to rebut that presumption by competent evidence." The court agreed with the Customs Court that the regulations were reasonable, and concluded that:

> In our opinion appellant has failed to rebut this presumption but, even independently thereof, the evidence of record is not, in our view, sufficient to establish that the notice under consideration was not posted in accordance with applicable law. *Id.* at 81.

The *Wess* case is readily distinguishable since its holding was based on the finding that plaintiff had adduced no evidence to establish its allegation. In the case at bar there is no question of insufficiency of proof. The defendant has acknowledged the error in the name of the party on the "courtesy notice." While it corrected the name of the importer from Winter-Wolff International Corp. to State Metals, Inc. on Customs Form 4333, it did not correct the "courtesy notice." Since it knew that the "courtesy notice" was relied upon by importers, the defendant cannot now be heard to say that plaintiff should not have relied upon it.

The defendant can derive no comfort from the admission in the affidavit of the Customs official that, after learning of the error, the posted notice was corrected. The importance of the "courtesy notice" was known to the Customs officials. To have corrected the name of the importer on the posted notice without correcting the mailed notice was prejudicial to the rights of the importer.

Under the circumstances, the court should not remain powerless to relieve the importer from the resulting hardship in a case in which the defendant concedes that the classification is erroneous. There is abundant judicial authority for the principle that, whenever possible, if the hardship is substantial the law will seek to prevent an injustice or inequity. Mr. Justice Cardozo, as chief judge of the Court of Appeals of the State of New York, in a case dealing with forfeitures, expressed the thought with characteristic eloquence when he stated, "[l]et the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path." *Graf*

*et al.* v. *Hope Building Corp.*, 254 N.Y. 1, 13, 171 N.E. 884, 888 (1930)` (dissenting).

In cases involving fundamental legal rights it is also necessary to recall the relationship between the requirement of notice and the demands of due process. In the words of Mr. Justice Jackson in the case of *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-70 S. Ct. 652, 657 (1950): "An elementary and fundamental require, ment of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information, * * * and it must afford a reasonable time for those interested to make their appearance * * * ." See also *United States* v. *Lee*, 106 U.S. 196, 220, 1 S. Ct. 240, 261 (1882), in which Mr. Justice Miller, after proclaiming the supremacy of law in our form of government, added:

> Courts of justice are established, not only to decide upon the controverted rights of the citizens as against each other, but also upon rights in controversy between them and the Government * * * .

In situations in which the agency decisions must afford a proper notice of action to be taken or which has been taken, it has been stated that, "[n]ot every form of official misinformation will be considered sufficient to estop the Government. * * * Yet some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the Government may be estopped from disavowing the misstatement." *Brandt* v. *Hickel*, 427 F. 2d 53, 56 (9th Cir. 1970).

In *Point Four Ltd., Inc.* v. *United States*, 78 Cust. Ct. 190, 431 F. Supp. 1254 (1977), the Government moved to dismiss on the ground that the protests had not been timely filed. The importer opposed the motion because it had been advised by the Customs officials in Toledo, Ohio, that the protests should properly be filed in the Chicago office. In denying defendant's motion to dismiss, Judge Richardson stated that, "* * * the rights of importers will not be forfeited, as a consequence of deceptive or improper practices indulged in by Customs officials. * * * If full credence be given to the allegations in the third paragraph of the complaint in this case it is clear that the ends of justice as well as the objective of the statute of limitations will be ill served by a declination of jurisdiction on the part of the court." 78 Cust. Ct. at 191–92. See also *Wolf D. Barth Co., Inc.* v. *United States*, 81 Cust. Ct. 127, C.D. 4778 (1978).

In *Reliable Chemical Company* v. *United States*, 81 Cust. Ct. 154, C.R.D. 78–11 (1978), *appeal pending*, a mailed notice of liquidation,

Customs Form 4333–A, was dated prior to the date of liquidation. As a consequence, the protest was filed before the effective date of the liquidation as stated on the notice. Judge Watson, writing for this court, stated:

> It would be improper for defendant, having chosen this form of notice, to then fall back on its regulations and attack the natural, reasonable and diligent response of plaintiff as premature under the law and it would be unjust for a court to sanction such conduct.
>
> The law is designed to provide judicial review of administrative decisions, not to magnify the importance of regulations which the agency itself obfuscates or contradicts by its actions, however well-intentioned they may be. *Cf. Colonna & Co., Inc.* v. *United States*, 75 Cust. Ct. 179, C.R.D. 75–4, 399 F. Supp. 1389 (1975).

As stated in the case of *Colonna & Co., Inc.* v. *United States*, 75 Cust. Ct. 179, 184, 399 F. Supp. 1389, 1393 (1975):

> Exculpatory explanations cannot be asserted against a party who, in justifiable reliance upon instructions received from an authoritative source, has changed his position to his detriment.

It has been agreed and stipulated that the imported merchandise has been erroneously classified, and that, as a consequence, the importer is entitled to moneys illegally exacted.

Based upon a stipulation of the parties, pursuant to the decision and judgment of this court now under reconsideration, one of three entries in this action has been reliquidated. Except for the misadventure caused by the "courtesy notice" upon which the importer relied, all of the entries would have been reliquidated. This alone has prevented the importer from receiving a return of the monies to which it is lawfully entitled.

On the particular facts presented, it is the determination of the court that there has been no valid liquidation of the two entries in dispute within the purview of section 514 of the Tariff Act of 1930, as amended. Thus, insofar as they relate to those two entries, the present protests are premature.

This determination renders it unnecessary to reach the question raised by the defendent that the protests in issue were filed by a party unauthorized by statute.

In view of the foregoing, the decision and judgment of February 9, 1978, with respect to entry Nos. 133088 and 107703 is rescinded and those entries are to be returned to Houston, Tex., the port of entry, so that the Customs officials may complete the required liquidation.

Judgment will be entered for the plaintiff in accordance with this opinion.