DOHERTY-BARROW OF TEXAS, INC., PLAINTIFF *v.* THE UNITED
STATES, DEFENDANT

Court No. 75–7–01865

Before BOE, *Judge.*

(Decided June 16, 1982)

*Stein, Shostak, Shostak and O'Hara (Marjorie Shostak* on the brief), for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, *Susan Handler-Menahem,* for the defendant.

*Stephen Berke,* U.S. Customs Service, of counsel.

Boe. *Judge:* The merchandise involved in the above-entitled action, described in the consumption entry as bale ties made from strip, was entered at the port of Los Angeles on July 9, 1974. Upon liquidation, the subject merchandise was classified as steel strip by customs officials under item 609.03, TSUS, which provides:

SCHEDULE 6.—METALS AND METAL PRODUCTS

PART 2.—METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

Strip, of iron or steel, not cut, not pressed, and not stamped to nonrectangular shape (except as provided in item 609.17):
    Other than alloy iron or steel:
        Not over 0.01 inch in thickness .......
            Hot rolled.................................
            Cold rolled .................................
609.03      Over  0.01  but  not  over  0.05....
            inch in thickness ........................ 8.5% ad val.

The plaintiff, in protesting the classification as liquidated, claims that the subject merchandise is properly classified as cotton bale ties under item 642.93, TSUS, which provides:

SCHEDULE 6.—METALS AND METAL PRODUCTS

PART 3.—METAL PRODUCTS

Bale ties, of iron or steel, with or without buckles or fastenings and whether or not coated with paint or other substance:
    Made from wire:

\*        \*        \*        \*        \*        \*        \*

642.93        Made from strip ............................... 0.02¢ per lb.

The defendant seeking to affirm the classification made by the customs officials has filed with this court a motion for summary judgment alleging therein that no genuine issues of material fact exist.

The plaintiff has filed a cross-motion for summary judgment requesting:

1. That the motion of the defendant be dismissed for the reason that there are genuine issues of material fact to be tried in connection with the above-entitled action, and

2. That in the event this court finds there are no genuine issues of material fact to be tried, plaintiff's claimed classification of the merchandise under item 642.93, TSUS, be sustained.

Defendant's response to plaintiff's cross-motion for summary judgment contains certain admissions with respect to the subject merchandise, its manufacture and use, which should be set forth in connection with this court's determination as to whether genuine issues of material fact exist, thereby preventing a determination of the respective motions for summary judgment. The following admissions made by the defendant are deemed particularly pertinent:

1. The defendant admits there are standard specifications for steel cotton bale ties, one of which is that which plaintiff refers to as American steel cotton bale ties.

2. Except for the fact that the merchandise does not meet the specification for a length of 11' 6", defendant admits that the merchandise meets the balance of the specifications for the type of cotton bale ties plaintiff refers to as American standard cotton bale ties.

3. Defendant admits and does not dispute that there are no practical or commercial uses for the imported merchandise other than to be made into cotton bale ties.

4. Defendant admits that the specifications of the merchandise in question dedicated it for use in the United States to make steel cotton ties and made it particularly unsuitable for other uses.

5. Defendant admits that the merchandise at issue requires only to be cut qto cotton bale ties length to be produced into cotton bale ties.

6. Defendant admits that bale ties, made from material such as the merchandise at issue by cutting to bale length, constitute the only bale ties of iron or steel utilized in baling cotton in the cotton industry of the United States at the time of the enactment of the tariff schedules.

Based on the foregoing admissions the court concludes that no genuine issue of material fact exists and that, accordingly, the instant action is ripe for determination upon the respective motion of the defendant and the cross-motion of the plaintiff for summary judgment.

The sole question before this court may be concisely framed:

Does the fact that the subject merchandise is not cut into lengths require its classification as a strip of iron or steel under item 609.03, TSUS, and preclude its classification as bale ties of iron or steel, made from strip, under item 642.93, TSUS?

Headnote 3(h) to section 6, part 2, subpart B defines strip:

(h) *Strip*: A flat rolled product whether or not corrugated or crimped, *in coils* or *cut to length,* under 0.1875 inch in thickness, and, if cold rolled, over 0.50 inch but not over 12 inches in width, or, if not cold rolled, not over 12 inches in width. [Emphasis added.]

The defendant urges that Congress intended item 609.03, TSUS, to encompass, within the definition of the term strip, steel meeting

the dimensional requirements of headnote 3(h), imported *in coils.* The defendant concludes that since the subject merchandise was imported in coils and not cut to length, it must be classified as a strip as defined by headnote 3(h) and item 609.03, TSUS.

The court is not persuaded by defendant's argument. It is true that in the adoption of the tariff schedules, Congress significantly reorganized the provisions of the Tariff Act of 1930. As stated in the Tariff Classification Study, Schedule 6, Part 2 at page 93, "[t]he existing provisions [relating to strip] are unnecessarily complex and confusing. The proposed provisions restate these existing provisions in a systematic, orderly manner without significant rate changes."

The intent of Congress in its definition of the term strip in headnote 3(h) can be clearly discerned. If a material bears the requisite dimensions as to width and thickness as provided therein, then such material may be classified as a strip, whether it may have been imported in *coils* or *cut to length.* Defendant's reliance upon the inclusion of the term "in coils" in headnote 3(h) as the basis for the classification of the subject merchandise as a strip appears to be misguided. If, as urged by the defendant, the provision in headnote 3(h) relating to the form of the merchandise in issue as imported (in coils or cut to length) were the decisive factor in the classification, it would logically follow that, alternatively, had the merchandise in issue been *cut to length,* it likewise should be classified as a strip under item 609.03, TSUS. Such a conclusion, indeed, would contravene the very admission of the defendant "that the merchandise in issue requires only to be cut to cotton bale ties length to be produced into cotton bale ties."

In opposition to defendant's motion plaintiff contends that the subject merchandise is precluded from classification under item 609.03, TSUS, by headnote 1(iv) to schedule 6, part 2. Headnote 1(iv) provides that part 2 does not include:

> (iv) Other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

Plaintiff maintains that the subject merchandise, given its manufactured condition, has been specially provided for as bale ties, unfinished, under item 642.93, TSUS, and General Interpretative Rule 10(h).

In *United States* v. *Buss & Co.,* 5 Ct. Cust. Appls. 110, 113, T.D. 134, 138 (1914), our appellate court clearly enunciates the rule to be applied in determining when merchandise, through manufacture or processing, ceases to be classified as a material and, accordingly, is classified as an article specially provided for:

> The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore

established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty* and in case the woven piece in its entirety is not commercially capable of any other use. [Emphasis added.]

For a bale tie to be "made from" strip under item 642.93, TSUS, some manufacturing process is implied which transforms strip steel into bale ties, whether finished or unfinished. Both finished and unfinished manufactured products must be sufficiently processed to a point where they possess characteristics distinguishing them from the material from which they are made. *American Import Co.* v. *United States,* 26 CCPA 72, 75-6, T.D. 49612 (1938).

The merchandise in issue, in conformance with rigid specifications as to chemical composition and tensile strength, consisting of a width of 15/16 of an inch and 19 VWG in thickness with 2 mill edges,[1] is conceded by the defendant to be dedicated and capable solely for use to make steel cotton ties. Except for cutting to length,[2] the subject merchandise requires no additional processing, manufacturing, or finishing. The court can only conclude from defendant's admissions as well as from an examination of a sample of the merchandise in issue, Defendant's Exhibit 1, that the character or identity thereof, except for cutting to length, is fixed with certainty, and, accordingly, an article specially provided for as a bale tie made from strip under item 642.93, TSUS.

The decision of this court in *J. E. Bernard* v. *United States,* 50 Cust. Ct. 41, C.D. 2386 (1963), is relevant hereto. There, the imported merchandise consisted of long strips of steel on which, during a milling and/or manufacturing process, teeth were formed, electronically heat treated, tempered, and polished. The merchandise was then coiled into desired lengths for packaging and shipment. Adhering to the "rule of decision" stated in *Buss, supra,* the court determined that at the time of importation, the character and identity of the merchandise as a bandsaw was fixed with certainty. The merchandise was not capable of any other use, and needed only the cutting to a required length for use in a particular machine.

The decisions in the cases of *Terumo-America* v. *United States,* 2 CIT 121, Slip Op. 81–89 (Sept. 30, 1981); *The Harding Co., et al.* v. *United States,* 23 CCPA 250, T.D. 48109 (1936); *Avins Industrial Products Co.* v. *U.S.,* 62 CCPA 83, 515 F.2d 782 (1975); and *Pacific Fast Mail Inc.* v. *United States,* 63 Cust. Ct. 468, C.D. 3938 (1969), upon which the defendant relies, are clearly distinguishable from

---

[1] Exhibit 1, Plaintiff's Brief.

[2] The record indicates that while the standard length for American steel cotton bale ties is 11 feet, 6 inches, some ties are cut to 9 feet, 6 inches in length for use in exporting cotton bales. Reasons of economy similar to those found in *J. E. Bernard* v. *United States,* 50 Cust. Ct. 41, C.D. 2386 (1963), may require that the ties be imported coiled rather than cut to length.

the facts in the instant action. In each, the subject imports were found by the court not to be unfinished articles. Unlike in the instant action, these cases involved articles which were not significantly advanced in the manufacturing process at the time of importation and required numerous and important processing steps before becoming fixed with certainty in identity and use.

In *Terumo-America, supra,* glass rods which required cutting, the formation of a bulb and at least eleven additional processing steps after importation, were held by the court to have been erroneously classified as clinical thermometers.

In *Harding, supra,* the court determined that the subject merchandise, as imported in rolls, had not been dedicated to the making of any particular automobile brake lining. The court held that before the merchandise could be classified as a part of an automobile, the identity of that particular automobile part must be fixed with certainty. Accordingly, the shaping and riveting of a brake lining material to fit the individual brake shoe desired was deemed necessary in order to transform the imported material into that part of an automobile called a brake lining.

In *Avins, supra,* our appellate court through Chief Judge Markey held that the imported merchandise, even though cut to specific lengths, could not properly be classified as unfinished parts of radio antennas because:

> 1. The merchandise had not been sufficiently advanced in its manufacture to have reached a point where it was incapable of being made into other things.
> 2. The cutting to specific lengths and straightening of the merchandise were not sufficient manipulations to dedicate the wire to the single use as an antenna part.
> 3. The degree of processing had not changed the wire, as imported, into a clearly identifiable part of any device.

In *Pacific Fast Mail, Inc., supra,* the court held that imported rail lacked the characteristics identifying it as track and explained:

> The importation meets none of the foregoing criteria: the sample rail in evidence is mute but potent witness to the fact that it possesses neither the shape, size, nor other characteristics which would identify it as track; and the lengthy, detailed steps involved in constructing track from rail cogently illustrate that the letter has not reached the point where it may be considered track in the unfinished state.

The plaintiff contends that the decision in *R. W. Smith and John D. Winchester a/c Doherty Petroleum Co., Inc.* v. *United States,* 49 CCPA 120, C.A.D. 806 (1962), should be controlling herein. Notwithstanding that *R. W. Smith* was decided under the Tariff Act of 1930, and Paragraph 314 thereof in particular, this court is in agreement with plaintiff's conclusion.

The merchandise involved in *R. W. Smith* was in all respects the same as involved in the instant action. The material had been

manufactured in accordance with the specification for standard cotton baling ties, possessing the same chemical and physical qualities including width and gauge. In the same manner as in the instant action, the merchandise was imported in coils instead of lengths of 11′ 6″.

Paragraph 314 of the Tariff Act of 1930 provided:

> Hoop or band iron, and hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, coated or not coated with paint or any other preparation, with or without buckles or fastenings, for baling cotton or any other commodity, one-fourth of 1 cent per pound.

In reversing the decision of the trial court, our appellate court held that the merchandise was classifiable as bale ties, notwithstanding the imported coiled strips had not been cut to length. The appellate court was satisfied that inasmuch as all manufacturing of the merchandise had been completed, except for the cutting to length, the article must be determined to be "partly manufactured" within the provisions of Paragraph 314 of the Tariff Act of 1930.

The defendant, however, urges that the *R. W. Smith* decision cannot be deemed controlling since the language utilized in item 642.93, TSUS, differs from the language of Paragraph 314 of the Tariff Act of 1930. Pointing out that the language "wholly or partly manufactured into hoops or ties," formerly contained in Paragraph 314 of the 1930 Tariff Act, has been deleted from item 642.93, TSUS, the defendant contends that the change in wording indicates a congressional intent to exclude "partly manufactured" bale ties from item 642.93, TSUS.

The court recognizes that a change in wording of a statute ordinarily evidences an intent to effect a change in meaning thereof unless a contrary intent plainly appears. *J. M. Altieri* v. *United States,* 82 Cust. Ct. 91, 295 F. Supp. 269 (1969). However, in endeavoring to ascertain congressional intent in changing the language of a statute, consideration must be given to all related provisions which likewise may have been enacted, as well as to the judicial construction of a statute in effect prior to the change in terminology.

The court is unable to share the defendant's conclusion that the change in terminology in item 642.93, TSUS, indicates a congressional intent to exclude therefrom "partly manufactured" bale ties.

The phrase "wholly or partly manufactured," originally contained in Paragraph 314 of the Tariff Act of 1930, was not alone deleted in the enactment of item 642.93, TSUS. The terminology, "cut to length," also contained in paragraph 314, was likewise deleted. The deletion of the latter phrase indicates that "cut to length" was not intended by Congress as a prerequisite to classification as a bale tie under item 642.93, TSUS.

General Interpretative Rule 10(h) contained in the Tariff Schedules of the United States provides:

(h) [U]nless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished.

It is important to note the purpose for the inclusion of General Interpretative Rule 10(h) in the Tariff Schedules. The United States Tariff Commission in its Tariff Classification Study, Submitting Report, at 19 makes the following explanation:

> It is the present customs practice, under the doctrine of entireties, to treat the unassembled components of an article under the tariff provisions for such article. In the existing schedules some tariff descriptions provide for an article "whether finished or unfinished" or with words of similar purport, and other tariff descriptions are silent on the question. This lack of uniform treatment has been the cause of some classification controversies and litigation. The proposed headnote will bring about desirable clarity and uniformity in this regard.

In the opinion of this court the foregoing rule must be read in conjunction with item 642.93, TSUS, and, in so doing, the construction given by judicial decision to the language "wholly or partly manufactured," contained in Paragraph 314 of the Tariff Act of 1930 must be deemed of equal import and application in the construction of item 642.93, TSUS.

It is further interesting to note that the Tariff Commission in its explanatory and background material contained in its Tariff Classification Study, Schedule 6, Part 2 and Part 3 indicates that item 642.93, TSUS, "would continue without rate change the provision for bale ties made from iron or steel strip." Pp. 145, 183. The Commission's reason for a change in language in Paragraph 314 is deserving of repetition:

> The existing provisions are unnecessarily complex and confusing. The proposed provisions restate these existing provisions in a systematic, orderly manner without significant rate changes.

From the foregoing facts presented herein, the court finds that the subject merchandise as imported: (1) was so far advanced in manufacture as to be dedicated for use in making steel cotton bale ties, (2) was incapable of other commercial and practical use and (3) required only to be cut to a standard length of 11'6" or a length of 9'6" when used for export purposes. The individual character and identity of the subject merchandise, admittedly, having been fixed with certainty, the court concludes that the classification thereof as liquidated under item 609.03, TSUS, as strip of iron or steel, is erroneous and that said merchandise should be properly classified under item 642.93, TSUS, as bale ties, made from strip.

Accordingly, the motion of the defendant for summary judgment is denied and the cross-motion of the plaintiff for summary judgment be and is hereby granted.

Let judgment be entered accordingly.